# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Sidney I. Schenkier | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 7428 | **DATE** | 12/19/2000 |
| **CASE TITLE** | Kinesoft vs. Softbank | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION AND ORDER.** Plaintiff's motion for summary judgment and partial summary judgment is granted in part and denied in part: (1) the motion for summary judgment on the counterclaim is granted, and (2) the motion for partial summary judgment on the allegation in the second amended complaint that Jordan Levy was the agent of defendants is denied. The Court will issue a separate opinion on defendants' motion for summary judgment.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | **Document Number** |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | **DEC 20 2000** | **63** |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | 12/19/2000 | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| JJK courtroom deputy's initials | | FILED FOR DOCKETING 00 DEC 19 PM 2: 26 | | JJK mailing deputy initials |
| | | Date/time received in central Clerk's Office | | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

KINESOFT DEVELOPMENT
CORPORATION,

        Plaintiff,

    vs.

SOFTBANK HOLDINGS INC. and
RONALD D. FISHER,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 99 C 7428

Magistrate Judge
Sidney I. Schenkier

DOCKETED

DEC 2 0 2000

## MEMORANDUM OPINION AND ORDER[1]

This case arises from a dispute over the performance of the terms of a 1997 settlement

agreement between plaintiff, Kinesoft Development Corporation ("Kinesoft"), and defendant

Softbank Holdings Inc. ("Softbank"), which had settled an earlier business dispute between Kinesoft

and Softbank's parent company. In its second amended complaint, Kinesoft alleges (in five counts)

that defendants Softbank and Ronald D. Fisher, the Vice Chairman of Softbank, are liable for breach

of contract, tortious interference with prospective economic advantage and breach of fiduciary duty.

In their answer, the defendants deny any liability; and, for its part, Softbank asserts a breach of

contract counterclaim against Kinesoft.

Both sides have filed motions for summary judgment, although largely addressing different

aspects of the case. Kinesoft's motion seeks summary judgment on Softbank's counterclaim and

---

[1] By the parties' consent, on January 11, 2000, this case was reassigned to this Court, pursuant to 28 U.S.C. §
636 (c)(1) and Northern District of Illinois Local Rule 73.1(b), to conduct any and all proceedings, and to enter final
judgment (*see* doc. ## 13 and 14).

partial summary judgment on the allegation in its second amended complaint that Jordan Levy was defendants' "agent" for purposes of liability. By contrast, defendants' motion (doc. # 47) seeks summary judgment on the liability claims in the second amended complaint; and in the alternative, if any of those claims survive, defendants seek partial summary judgment on plaintiff's damages claims. Both motions are now fully briefed. Because the questions raised by plaintiff's motion can be decided independently from those raised by defendants' motion for summary judgment, this opinion addresses only plaintiff's motion; we will address defendants' motion in a separate opinion. For the reasons explained below, plaintiff's motion is granted in part and denied in part.[2]

## I.

Summary judgment is proper if the record shows that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *See Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1090 (7th Cir. 1999). A genuine issue for trial exists only when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *See Liberty Lobby*, 477 U.S. at 249-50; *Flipside Prods., Inc. v. Jam Prods. Ltd.*, 843 F.2d 1024, 1032 (7th Cir. 1988).

Local Rule 56.1(a) requires a party moving for summary judgment to file a statement of material facts as to which the moving party contends there is no genuine issue. All properly supported material facts set forth in such a statement are deemed admitted unless properly

---

[2]The plaintiff's memorandum in support of the motion for summary judgment and partial summary judgment will be cited as "Pl.'s Mem. at __." The defendants' opposition memorandum will be cited as "Defs.' Resp. at __." And the plaintiff's reply memorandum will be cited as "Pl.'s Reply at ___." Pleadings will be cited as follows: the Second Amended Complaint will be cited as "Second Am. Compl. ¶ __" and the Counterclaim will be cited as "CC ¶ __."

controverted by the opposing party. *See id.*; *see also Corder v. Lucent Techs., Inc.*, 162 F.3d 924, 927 (7th Cir. 1998); *Flaherty v. Gas Research Inst.*, 31 F.3d 451, 453 (7th Cir. 1994); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 921-22 (7th Cir. 1994). Mere denials of a properly supported factual statement are not sufficient to show that a genuine issue of material fact exists. *See Shermer v. Illinois Dep't of Transp.*, 171 F.3d 475, 477 (7th Cir. 1999) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). Rather, a party must "come forward with appropriate evidence demonstrating that there is a pending dispute of material fact." *Waldridge*, 24 F.3d at 921; *see also Vector-Springfield Properties, Ltd. v. Central Illinois Light Co., Inc.*, 108 F.3d 806, 809 (7th Cir. 1997). To meet this burden, a party contesting a motion for summary judgment must counter the affidavits and documents submitted with materials of "evidentiary quality" (*e.g.*, documents, depositions, and/or affidavits) that create a genuine factual issue. *Adler v. Glickman*, 87 F.3d 956, 959 (7th Cir. 1996). While the evidence offered need not be in a form that would be admissible at trial, *see Liu v. T&H Mach., Inc.*, 191 F.3d 790, 796 (7th Cir. 1999), the evidence must identify a specific, genuine issue for trial. *See Shermer*, 171 F.3d at 477.

Both plaintiff and defendants have filed statements of material, undisputed facts which properly include "references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph." UNITED STATES DIST. COURT, N. DIST. OF ILL. LR 56.1.[3] After careful review of plaintiff's motion for summary judgment and partial summary judgment, the Court finds that summary judgment must be entered against Softbank on

---

[3]We do note that Kinesoft uses a novel approach in this regard: rather than submitting a separate statement of facts, Kinesoft has included its factual statement in its brief, dividing up the facts it considers relevant to each part of the motion in separate sections. Although there is not a technical rule requiring a party to file a separate document, either in the local rules or in this Court's standing order, such a practice impairs the ability of the defendant to file a responsive statement in the form of an answer to a complaint, as required by the Court's Standing Order.

its counterclaim for breach of contract. However, as to the motion for partial summary judgment, the Court finds that Fed. R. Civ. P. 56(d) does not provide a proper procedural vehicle for the ruling plaintiff seeks. The Court therefore denies plaintiff's motion for partial summary judgment.

## II.

The following material facts are undisputed and relevant to the plaintiffs' motion for summary judgment and partial summary judgment.[4] Softbank and Kinesoft entered into a Settlement Agreement ("Settlement Agreement") on June 12, 1997 (Pl.'s Facts ¶ 1; *see also* Pl.'s Ex. A and Defs.' Ex. 9 (copies of the Settlement Agreement)). Both parties agree that the Settlement Agreement was a binding and enforceable agreement compromising Kinesoft's claims against Softbank's parent (Softbank Corporation) for an alleged breach of an earlier agreement, the Game Porting Agreement ("Porting Agreement") (Pl.'s Facts ¶ 2, Ex. A; Defs.' Facts ¶¶ 6-9).

As a part of the Settlement Agreement, Softbank agreed to provide funding to Kinesoft for certain business purposes. The Settlement Agreement provided that Softbank "shall" make an "Initial Advance" to Kinesoft of $5 million immediately upon signing the Settlement Agreement (Defs.' Resp. Facts ¶ 3; Pl.'s Ex. A, § 2.01(a)). The Settlement Agreement further provided that Softbank "shall" make two "Subsequent Advances" of $2.5 million each: one on April 1, 1998 and the other on October 1, 1998 (Defs.' Resp. Facts ¶ 3, Pl.'s Ex. A, § 2.01(b)-(c)). There is no dispute that Softbank, in fact, made those advances to Kinesoft upon request at the times designated by the Settlement Agreement (Defs.' Facts ¶ 10).

---

[4]Plaintiff's statement of undisputed facts, contained in its brief, will be cited as "Pl.'s Facts ¶ ___." Defendants' responsive statement of facts will be cited as "Defs.' Resp. Facts ¶ __." Defendants' additional statement of facts in response to plaintiff's facts will be cited "Defs.' Add'l Facts ¶ ___." And the defendants' own statement of undisputed facts will be cited as "Defs.' Facts ¶ ___." Any other citations refer to the pleadings or the record in the case. Those citations follow the same format outlined *supra* note 2 of this opinion.

The parties further agree that under the Settlement Agreement, the Initial and Subsequent Advances were to be used by Kinesoft for "general corporate purposes" (Defs.' Resp. ¶ 3; Pl.'s Ex. A, § 2.02) – a term that the Settlement Agreement does not define. Softbank has offered no evidence showing how (or if) Kinesoft has spent the $10 million in Initial and Subsequent Advances. However, at the end of 1998, Kinesoft had approximately $9 million in cash equivalents and over $5 million in market securities (Defs.' Add'l Facts ¶ 19; CC ¶ 7; Kinesoft Reply at 6). A financial analysis performed at the end of December 1999 also indicated that Kinesoft had added $750,000 to its "Spending Forecast" (Defs.' Add'l Facts ¶ 23, citing Defs.' Ex. 16 at 15629).

In addition to Initial and Subsequent Advances, the Settlement Agreement defined another type of advance payment: "Capital Advances" (Pl.'s Ex. A, § 2.01(d)). The Settlement Agreement provided that Softbank "shall" provide Capital Advances not to exceed $15 million, "to be made by SOFTBANK to Kinesoft in accordance with this subsection (d) and subsection (e) below, from time to time and at Kinesoft's request, for expenses and transactions not in the ordinary course of business and pursuant to the 'Business Plan' (as defined below)" (*Id.*).

### III.

The issue raised by the Softbank's counterclaim is whether Kinesoft has breached the Settlement Agreement by using the Initial and Subsequent Advances of $10 million for purposes other than "general corporate purposes." The plaintiff's motion for summary judgment on defendant's counterclaim asserts that (a) Softbank has not adequately pled a claim for breach of contract; and (b) in any event, there are no genuine issues of material fact on the necessary elements of that claim to allow either claim to go forward. We agree with Kinesoft that the counterclaim fails to present a triable issue.

## A.

Under Illinois law, an action for breach requires: (1) the existence of a valid and enforceable contract; (2) breach of the contract by plaintiff; (3) performance of the contract by defendant; and (4) a resulting injury to the defendant (*i.e.,* damages proximately caused by the breach). *See Gonzales v. Am. Ex. Credit Corp.,* 733 N.E.2d 345, 351 (Ill. App. Ct. 1st Dist. 2000); *Gallagher Corp. v. Russ,* 721 N.E.2d 605, 611 (Ill. App. Ct. 1st Dist. 1999); *Elson v. State Farm Fire & Cas. Co.,* 691 N.E.2d 807, 811 (Ill. App. Ct. 1st Dist. 1998). Softbank has not alleged injury resulting from Kinesoft's alleged breach of contract. Were this shortcoming presented on a motion to dismiss, the counterclaim would fail to state a claim. However, since Kinesoft elected to answer the counterclaim and instead attack the counterclaim on a motion for summary judgment, the Court focuses on whether defendants have identified facts which create a genuine material dispute on each element of the breach of contract counterclaim. A review of the summary judgment record reveals that defendants have failed to do so.

## B.

As the non-moving party, it was Softbank's obligation to "come forward with appropriate evidence demonstrating that there is a pending dispute of material fact." *Waldridge,* 24 F.3d at 921; *see also Vector-Springfield Properties, Ltd. v. Central Illinois Light Co., Inc.*, 108 F.3d 806, 809 (7th Cir. 1997). Softbank has failed to satisfy that evidentiary burden.

In their brief, defendants state that: "[n]ow that discovery has been concluded, Softbank will demonstrate the monetary damages resulting from Kinesoft's breach" (Defs.' Resp. at 4). Despite that promise, Softbank fails to offer evidence to show it has suffered any injury or damages even if a breach by Kinesoft occurred. Thus, even assuming that Kinesoft failed to use the Initial and

Subsequent Advances for "general corporate purposes," Softbank has offered no evidence to show that it was injured by that breach. Without more, that is enough to dispose of the counterclaim on summary judgment.

But Softbank additionally fails to offer evidence that would create a triable issue on whether there was any breach at all. Softbank offers no evidence that Kinesoft used the Initial and Subsequent Advances for purposes other than "general corporate" ones. By contrast, the plaintiff has offered evidence that Kinesoft "regularly draws on [the advances] to pay for the products it is currently developing" (Pl.'s Reply at 7, *citing* Pl.'s Exhibits Vol. II (F)). Softbank points to nothing to show that this kind of expenditure is not for a general corporate purpose.

Softbank instead premises its claim of misuse of the Initial and Subsequent Advances on two assertions: (1) that Kinesoft has improperly used that money to fund this lawsuit (Defs.' Resp. at 7-8), and (2) Kinesoft has not used the money in furtherance of the goal of "becom[ing] a lender in the interactive entertainment industry," or to pursue goals in a business plan that predated the Settlement Agreement (*Id.*, at 6). Neither assertion is sufficient to defeat summary judgment.

*First*, Softbank fails to offer any evidence to back up its claim that Kinesoft's "most expensive misuse of Softbank's $10 million advances" is the use of the Initial and Subsequent Advances to fund the present litigation (Defs.' Resp. at 7). To begin with, Softbank fails to cite any term in the Settlement Agreement or a case supporting the proposition that use of money to pursue corporate litigation (or to defend against litigation) is outside the scope of "general corporate purposes." Since it is Softbank's burden to show that such use falls outside the parameters of the agreement, that failure of proof is fatal to the counterclaim.

Moreover, even if litigation expenditures fell outside the ambit of "general corporate purposes," Softbank's counterclaim cannot survive summary judgment because it fails to offer evidence that Kinesoft in fact is paying for this lawsuit by using Initial and Subsequent Advances. Softbank has had ample chance through discovery to uncover evidence on this point. At this stage of the litigation, defendants' mere speculation about the source of Kinesoft's funding for this lawsuit is not enough. The essential purpose of summary judgment is to determine whether there are facts sufficient to warrant a trial. Thus, the party responding to a summary judgment cannot wait until trial to reveal the evidence it claims warrants a trial. "[A] party seeking to defeat a motion for summary judgment is required to 'wheel out all its artillery'" to demonstrate that a genuine issue of material fact exists which supports sending the claim to trial. *See Caisse Nationale de Credit v. CBI Indus., Inc.,* 90 F.3d 1264, 1270 (7th Cir. 1996). Here, Softbank has failed to identify facts sufficient to warrant a trial on its theory that Kinesoft breached the Settlement Agreement by using Initial and Subsequent Advances for litigation purposes.[5]

*Second,* Softbank's argument that Kinesoft has not otherwise properly used the Initial and Subsequent Advances fails for two reasons. At the threshold, even accepting Softbank's argument that those advances were required to be used "in furtherance of" Kinesoft's "pursuit" to become a "leader in the interactive entertainment industry" or to pursue the goals outlined in the business plan created in 1996 prior to the Settlement Agreement (Defs.' Resp. at 6), Softbank again offers no evidence to show that Kinesoft spent the money for other purposes. Indeed, even after discovery,

---

[5]Defendants' argument that "prior to discovery" they did not have access to documents or other evidence showing the amounts that Kinesoft had not used for "general corporate purposes" to support a claim for damages (Defs.' Resp. at 3) is without merit at this stage of the case. There has been plenty of discovery, and if defendants can point to no evidence to support their claim now, they are not entitled to a trial in the hope they can do so by then.

defendants offer little evidence at all as to how (or whether) Kinesoft spent those advances. Softbank cites no evidence to prove that the Initial and Subsequent Advances were used for non-general corporate purposes: no deposition testimony, no affidavits, and no documents.

Moreover, the core premise of Softbank's argument is that the specific requirements for Capital Advances, set forth in Sections 2.01(d) and (e), also apply to Initial and Subsequent Advances under Sections 2.01(a) through (c). That contract construction is untenable.

Under Illinois law, a fundamental principle of contract construction is to give effect to the intent of the parties, which is determined by examining the language of the contract. *See LaSalle Nat'l Trust, N.A. v. ECM Motor Co.,* 76 F.3d 140, 144 (7th Cir. 1996); *Lewis X. Cohen Ins. Trust v. Stern,* 696 N.E.2d 743, 751 (Ill. App. Ct. 1st Dist. 1998). In construing a contract, Illinois courts look to the entire agreement, and give effect -- to the extent possible -- to each provision. *See, e.g., Bourke v. Dun & Bradstreet Corp.,* 159 F.3d 1032, 1038 (7th Cir. 1998). Absent explicit language to the contrary, the terms and phrases contained in the contract will be given "their ordinary and natural meaning." *See LaSalle National Trust,* 76 F.3d at 144; *Lewis X. Cohen,* 696 N.E.2d at 751. And, of course, those well-settled principles apply fully to the construction of settlement agreements, which are simply one specie of contract. *LaSerage Tech. Corp. v. LaSerage Labs., Inc.* 972 F.2d 799, 802 (7th Cir. 1992) (settlement agreements are contracts, and the construction and enforcement of those agreements are governed by principles applicable to contracts generally).

The plain and ordinary meaning of the disputed terms of the Settlement Agreement yields only one reasonable construction – and it is not the one urged by defendants. The language and structure of the Settlement Agreement make it plain that Initial and Subsequent Advances, and the conditions of their grant and use, are wholly separate from Capital Advances.

The Settlement Agreement, by its terms, does not require that Kinesoft meet any conditions in order to trigger *distribution* of the Initial and Subsequent Advances: the agreement provides that Softbank "shall" provide those advances to Kinesoft in specified amounts by specified dates (Pl.'s Ex. A, §2.01 (a)-(c)). The Settlement Agreement does specify the *use* that Kinesoft may make of the Initial and Subsequent Advances. Section 2.02 states that "[t]he proceeds of the Initial Advance and the Subsequent Advances shall be used by Kinesoft for general corporate purposes" (Defs.' Resp. ¶ 3; Pl.'s Ex. A, §2.02).

By contrast, the Settlement Agreement provides that "Capital Advances," in an aggregate amount not exceeding $15,000,000, "shall" be made available to Kinesoft not automatically, on certain specified dates, but instead "for expenses and transactions *not in the ordinary course of business . . . pursuant to a 'Business Plan' (as defined below) . . .* [and] *subject to the satisfaction of the conditions set forth in subsection (e) . . . .* " (Pl.'s Ex. A, § 2.01(d) (emphasis added)). Section 2.01(e) outlines various terms by which requests for Capital Advances "shall be governed." Among those terms are the stated purposes for which Capital Advances "shall" be used, which include efforts to further "Kinesoft's pursuit of becoming a leader in the interactive entertainment industry." Section 2.01(e) also outlines procedures for making a "Draw Request" for Capital Advances; Section 2.02, in turn, states that "Capital Advances shall be used by Kinesoft in accordance with the applicable Draw Request."

Softbank claims that Kinesoft violated the Settlement Agreement by failing to use the $10 million dollars distributed pursuant to the Initial and Subsequent Advances under Sections 2.01(a) through (c) in compliance with the provisions pertaining to the distribution and use of Capital Advances delineated in Sections 2.01(d) and (e) (Defs.' Resp. 5-8). But those provisions for Capital

Advances pertain exclusively to the distribution and use of Capital Advances, and not the Initial and Subsequent Advances. Capital Advances on the one hand, and Initial and Subsequent Advances on the other hand, are addressed in separate portions of the Settlement Agreement. The terms set forth in Section 2.02(d) and (e) expressly apply to Capital Advances; nothing in the agreement purports to apply those terms to the use of Initial and Subsequent Advances. Moreover, there is no basis to imply that those terms govern Initial and Subsequent Advances, which under the Settlement Agreement are for a different purpose than Capital Advances. Under the Settlement Agreement, Initial and Subsequent Advances shall be used for *"general corporate purposes"* (§ 2.02), but Capital Advances shall be used "for expenses and transactions *not in the ordinary course of business* and pursuant to the 'Business Plan'" (§ 2.01(d)) (emphasis added). Softbank has offered no evidence to show why those terms concerning the distribution and use of Capital Advances have anything to do with the use of Initial and Subsequent Advances.

Softbank nonetheless argues that Kinesoft's alleged failure to meet the requirements for Capital Advances should be considered by the jury in deciding whether Kinesoft failed to meet the different contractual requirements for use of Initial and Subsequent Advances (Defs.' Resp. at 7). That argument is a non-starter. Softbank has not offered any evidence that Kinesoft's use of the Initial and Subsequent Advances violated the "general corporate purposes" requirement; nor has Softbank shown how a jury reasonably could find such a violation merely for Kinesoft's alleged failure to meet the separate provisions that address for obtaining or using Capital Advances.

Accordingly, the Court grants plaintiff's motion for summary judgment as to Softbank's counterclaim.[6]

## IV.

We now turn to plaintiff's motion for partial summary judgment on the question of whether Mr. Levy was an agent of Softbank. This motion is mislabeled: it does not seek *judgment* on any claim, but seeks instead a determination of an issue that may be relevant to certain claims. The Court finds that Rule 56(d) is an improper vehicle for the ruling that plaintiff seeks, and for that reason, denies the motion.

Rule 56(d) states, in relevant part:

> If on motion under this rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the motion, . . . shall if practicable ascertain what material facts exist with substantial controversy and what material facts are actually and in good faith controverted. . . . Upon the trial of the action the [material, undisputed] facts so specified shall be deemed established, . . .

The Court reads Rule 56(d) as being triggered when summary judgment cannot be granted in whole or part under Rule 56(a) or (b). In that situation, Rule 56(d) serves the salutary purpose of allowing a court to see to it that the expenditure of time by the parties and the Court on a failed summary judgment motion has not been in vain. *Accord, Capitol Records, Inc. v. Progress Record Distrib.*,

---

[6]Plaintiff alleges that although it carries the label of breach of contract, the counterclaim is really a claim for equitable accounting in disguise (Pl.'s Mem. 2, 4-5; Pl.'s Reply 1-4). If this were in fact the claim that Softbank asserts (which Softbank denies (*see* Defs.' Resp. at 2-5)), summary judgment would still be appropriate. To prove a claim for an accounting in Illinois, a plaintiff must establish the absence of an adequate remedy at law and either a breach of a fiduciary relationship, a need for discovery, fraud, or the existence of mutual accounts which are of a complex nature. Generally, the lack of an adequate legal remedy is the essential prerequisite to an accounting claim. There is an exception to this rule: Illinois courts will excuse a plaintiff's failure to allege the absence of an adequate remedy at law if the accounting claim is based on a breach of fiduciary duty. *See 3Com Corp. v. Electronic Recovery Specialists, Inc.*, 104 F. Supp. 2d 932, 940 (N.D. Ill. 2000). Here, Softbank's counterclaim does not plead (and Softbank in opposing summary judgment does not seek to offer evidence showing) the absence of an adequate legal remedy for the alleged breach of contract or failure to use the Initial and Subsequent Advances for "general corporate purposes," or a purported breach of fiduciary duty.

106 F.R.D. 25, 29 (N.D. Ill. 1985) (Rule 56(d) is intended to "salvage whatever constructive results have come from the judicial effort to dispose of a motion for summary judgment"). Using Rule 56(d), a court may deem as established certain undisputed, material facts, and thus prevent the needless expenditure of time in proving those facts at trial (or negotiating over stipulations to those facts in the final pretrial order).

But Rule 56(d) does not authorize what Kinesoft seeks here: a free-standing motion simply to find that certain facts are undisputed, or that certain legal (or mixed fact/law questions) should be resolved in its favor. *Capitol Records, Inc.*, 106 F.R.D. at 29 ("Rule 56(d)) does not authorize the filing of a motion for partial adjudication [ ]"); 10B CHARLES A. WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE: CIVIL 3D § 2737, at 311-12, 314, 316-20 (1998) ("The procedure prescribed in subdivision (d) is designed to be ancillary to a motion for summary judgment. Unlike the last sentence in Rule 56(c), which provides an interlocutory judgment on a question of liability, Rule 56(d) does not authorize the entry of a judgment on part of a claim or the granting of partial relief[.] It simply empowers the court to withdraw sham issues from the case and to specify those facts that really cannot be controverted. . . .")

Finally, even if plaintiff's request for adjudication of the agency issue properly had been brought as part of a motion under Rule 56(a), the Court would exercise its discretion to decline to enter a Rule 56(d) ruling. 10B CHARLES A. WRIGHT, ET AL., § 2737, at 319-20 ( "[I]f the court determines that entering a partial summary judgment by identifying the facts that no longer may be disputed would not materially expedite the adjudication, it may decline to do so . . . since [such orders] bypass the normal pretrial procedures"). To the extent the agency issue Kinesoft seeks to present in its Rule 56(d) motion also is raised in defendants' summary judgment motion, that issue

– and the evidence Kinesoft offers on that issue – will be considered by the Court when it addresses defendants' motion.

## CONCLUSION

For the reasons given above, IT IS THEREFORE ORDERED that plaintiff Kinesoft's motion for summary judgment is GRANTED, and plaintiff's motion for partial summary judgment is DENIED. Each side shall bear its own costs with respect to this motion. The Court will address defendants' summary judgment motion in a separate opinion.

ENTER:

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**Dated: December 19, 2000**